May it please the Court, I'm Eric Alan Isaacson, Counsel for the Plaintiffs and Appellants and Intervenor Appellants. I'd like to reserve, if I may, five minutes of my time for rebuttal. You may just watch the clock. Thank you, Your Honor. There are really two big questions presented by this appeal. I think the first one is did the arbitrator decide whether, if she was bound to arbitrate, the contract permitted class proceedings? I would contend that Judge Hoth erred in the way that she decided the question of arbitrability. I read the order and it looks to me like Judge Hoth is referring the question of arbitrability in terms of whether there was a contract in the first place for the arbitrator to decide. I take it there was certainly no written contract? There's absolutely no written contract. No document that has her signature on it? No document with her signature on it, no document that she was aware of, quite frankly, Your Honor. What would be the contention that there was a contract if it had gone that far? Obviously the arbitrator ducked it, but what's the other side's contention that there was a contract? I guess the other side's contention is that anybody that they sent these materials to implicitly agreed to the arrangement where they were being billed $70 or $80 a year and were agreeing to be bound by the arbitration agreement in materials that they, quite frankly, generally didn't know about and didn't even know were sent to them. Well, okay, but she also, they put in evidence of some conversation that they had with her on the phone. She acknowledges that she got the membership kit. She acknowledges that. She paid the bill the first year, and then it's the second year where she comes in. Well, the bill that she paid was her credit card bill to her credit card company. But she didn't contest it at that time. No, she didn't. She waited until the second year. She didn't notice it. She probably conducted her financial affairs much as I do, and I, quite frankly, don't pay a lot of attention to every line item on a credit card bill. The important thing to me is to make sure that I get my bill paid on time rather than to sort out every billing in it. She did not notice it. There was an entry for MWI Essentials. She didn't notice it. She didn't know what it was, and she certainly hadn't been, you know, hadn't agreed to be bound by any contract. There was no meeting of the mind. Right, but what was the testimony that was from Member Works that they talked to her on the phone, that what did they tell her was going to happen and that you're going to receive this, and what did they say about cancellation and all of that? What was before the district court? That testimony was placed before the district court by Member Works. It was an affidavit by a woman named Chad Horn, which basically recited substantially the same facts that are alleged in the complaint because the complaint alleges those very things, that there was an upsell script that was misleading. They're the same facts that are identified by the arbitrator as undisputed facts that lead the arbitrator ultimately to conclude that there was no contract, no agreement to arbitrate. Now, if Judge Hoff referred to the arbitrator the question of whether there was a contract, that was error because it was a question for her to decide. If she decided it herself, as the defendants contend, that was error because there was a genuine issue of material fact as to whether there was, in fact, a contract on undisputed facts, on the very undisputed facts that ultimately led the arbitrator to conclude that there was no contract. Now, under the Federal Arbitration Act, the procedural provisions indicate quite clearly that you get to have a hearing. Okay, but so you're, but I'm not, you're saying if there were disputes in the facts about whether there was an agreement to arbitrate, you're saying that a judge can't resolve that? I'm saying that a judge can't resolve that without holding a hearing. The statute says that you're entitled to a hearing. Section 4 states that quite clearly, and it says that if there's a genuine issue of fact, the matter shall proceed summarily to trial. What did Judge Hoff do? She took it off calendar. On July 10th, she issued an order taking the matter off calendar so that Patricia Sanford didn't even get her hearing that was scheduled for the 15th. And then Judge Hoff issued an order with no hearing of any kind, no evidentiary hearing, which we were entitled to, issued the order of compelling arbitration. And the order of compelling arbitration was an order that acknowledged plaintiff's argued she did not know she had enrolled in the program until her credit card was charged. That's ER 36 at page 3. Judge Hoff writes on page 4, here, plaintiff contends that she was not aware that she was part of the membership program until she canceled in February 2000. I would contend that that means no meeting of the contract. Judge Hoff continues, though, in essence, she challenges the validity of the whole contract and not specifically the arbitration agreement. Accordingly, this is an issue for the arbitrator and not the court. I don't see how you can read that reasonably as an order that is doing anything other than referring to the arbitrator, the question of contract formation. Now, there are instances where it's appropriate to do that. I mean, you're not saying it would be inconsistent that you could decide that there was an agreement to arbitrate and then refer it for the court to decide what else went on. Because even though she's claiming the same facts, essentially, I still think a court could make a determination that by virtue of her actions that she had agreed to arbitrate, but there are still other issues that would be left to the arbitrator. Well, that is, I think, a statement that a trier of fact can decide this issue one way or the other. Trier of fact might conclude that there was an on this record, might conclude that there was an agreement to arbitrate, or a trier of fact might conclude that there was not one. But if it's a question for a trier of fact, the statute clearly gives us a right to jury trial. If there's a genuine issue of material fact on that issue, we get a jury trial, just like in a summary judgment case. If it's a genuine issue of fact. You agreed to arbitrate? We get a trial on that question. You're saying you get a jury trial on that? Counsel Wigley, you're back in range before you respond. Thank you, Your Honor. The statute in 9 U.S.C. Section 4 says, and I quote, the court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration, or the failure to comply therewith, is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. But we didn't get the hearing, and we didn't get a finding that the question is not an issue. What we got was a finding that it's a question for the arbitrator to decide. Now, the statute goes on and says if the question is an issue and there's a question of fact on it, you get a trial. And we didn't get the trial. We didn't get the hearing. We didn't get the trial. And the question was referred to the arbitrator. Now, if the reference of that question to the arbitrator was proper, what the arbitrator found was that there was no contract. There are instances where if parties agree that the question of arbitrability ought to be decided by an arbitrator, in limited circumstances it may be appropriate to refer that to an arbitrator. Well, here the arbitrator found no contract. However you slice it, whatever avenue you want to go down in terms of interpreting these things, it seems to me the order has to be reversed. There was a genuine issue of material fact. It was a question to be tried either by the court in a trial, which we never got, or it was a question, if it was appropriate to refer to the arbitrator, that the arbitrator decided saying no contract, at which point the case should have come back to the district court for Patricia Sanford to litigate it. Now, the other big problem is the question of whether she could proceed on behalf of a class. I mean, the claims that issue here are small enough that there's no economically viable way to prosecute a case like this on behalf of one individual to get her $70 or $80 back. It's got to be on behalf of a class action. The question of, ordinarily, if the arbitration agreement doesn't specifically prohibit class arbitration, that the question of class arbitrability is a question of contract construction and application for the arbitrator. It was something for the arbitrator to decide. Judge Huff denied the arbitrator the opportunity to do that. Only the individual claims of Patricia Sanford were referred to the arbitrator. The arbitrator says, look, I'm limited by what Judge Huff did. I can't let this proceed on the basis of a class action. And I submit that that's error. In Basel, you have a case with a couple of cases going up. One of them, in the lacking action, the arbitrator made a determination regarding class arbitrability that relied on a judicial interpretation of the arbitration agreement. And the Supreme Court vacated that, said, no, the arbitrator shouldn't be deferring to a judge on that question. The question is one for the arbitrator to decide. So we have an error there as well that I think requires reversal in the facts of this case. So didn't your client prevail before the arbitrator? She actually won a return of a small amount of money and by way of interest. Yeah, about $35, Your Honor. Right. Well, if your client prevailed, why is she bringing this action to vacate the prior order? She's doing it for substantially the same reasons you see in cases like, I believe, Roper, where somebody is representing a class. And even if they get full recovery themselves in their individual claim, they've got a right to share the expenses of litigation. And the Supreme Court has recognized that satisfaction of one individual named plaintiff's claim doesn't preclude further prosecution of the action on behalf of the class. Now, another consideration is, quite frankly, the Now, if the arbitrator didn't have the authority to rule on the merits because she didn't enter an arbitration agreement, she has a much more substantial case to be prosecuting before the district court. Well, what about, okay, what if I, let's take it hypothetically, what if I were to say that, all right, that Judge Heff ruled and said that this case, you know, that there's an arbitration agreement, it goes to arbitration, that then, but, and then your client prevailed, but you don't agree with everything there. But that was decided. Then you have the issue of the arbitrator said, I wasn't referred the class certification, so I can't decide that. That comes back. And then we get into all that. So, let's say if I accept your argument that you never got a venue for the class certification, why isn't the remedy then just to refer that back for determination by an arbitrator subsequent to Greenhouse, the Green Tree, Green. Subsequent to Green Tree versus Basel? Green Tree, yeah. Why do you get to just set aside, I mean, there, why do you get to set aside the whole arbitration and just get a clean slate? If, if, if the determination is that it should have been arbitrated, but the only question is arbitrability on behalf of the class, then the remedy, I would think, would be to send it back to the arbitrator for the arbitrator to decide whether Sanford ought to be able to proceed on behalf of a class, quite frankly. Because that's the question for the arbitrator. But what you're really asking for is just to vacate the entire arbitration and start all over again. Well, I would be perfectly happy to keep the, there's several levels of arbitration. I'm in a situation where if you find that there is no arbitration agreement requiring the matter to be arbitrated, then I think you set aside the entire judgment below and we start over again before the district court. If you were to find that it was prop, proper for the Judge Hough to refer the matter to the arbitrator, and it was proper for it to be arbitrated in the merits of Sanford's claims by the arbitrator, then the question on remand would be for the arbitrator to determine whether she ought to be able to proceed on behalf of a class. And if for some reason the arbitrator thinks that the fact that he concluded she won on the merits bars that, then the question would be whether we ought to be able to intervene, somebody like the Smiths in the case, to proceed with the case as a class action. There are all kinds of procedural issues that come into proceedings like this in terms of statutes of limitations and that sort of thing. So it is litigated on the basis of the class claims that were initially asserted. And that were asserted before the arbitrator as well. The petition and arbitration is captioned as a class petition. And it's very clear that we're trying to get class claims arbitrated by the arbitrator. The arbitrator had the right to determine whether the matter should proceed as a class action or not, but said I can't do it because Judge Hough precluded it. And I submit that that's I think are the two big issues in the appeal. There are a number of other matters such as whether West can be liable for a violation of Section 3009 if it didn't do the actual mailings of the fraudulent billings. What's the status of West at this point? Are they still in this litigation? Well, the district court dismissed the claims against West. And in order to do that, they filed a complaint in California State Court. It's a much narrower class. It's on behalf of a class of California plaintiffs only rather than on behalf of a national class. And that case is currently pending in the California State Court. It went up on appeal. Sanford's claims were held to be barred by the California Court of Appeal on the ground that the judgment in this action was race judicata. But the court remanded saying that Sanford ought to have an opportunity to argue that she can amend the complaint to bring in a couple of interveners to prosecute the action. And that's basically what's happened. We've got a couple more plaintiffs that are in the case that are trying to prosecute it on behalf of a narrower class against West only in California State Court. It would make far more sense to have all of the claims before the federal court where we started out than to be litigating in multiple forums. I see I've got about four minutes left. I'd like to take that time to reserve. Thank you very much. We'll hear from the appellees. Your Honor, may it please the court, Daryl Haber on behalf of Appellee Member Works. We will take 15 of the 20 minutes. Appellee West will take the other five. Your Honor, a number of issues I believe were scrambled there. And I think what they have in common and what is left out is all of them are the result of the appellants and their class action counsel's strategic decisions in this case. First, the issue of whether the court determined there was a contract. She did. The arbitrator looked at the decision and said that's the only way to read it, that she referred the issue of arbitration of the individual claims to the arbitrator because there was a contract and dismissed the class claims because the issue was not presented to send class claims to arbitration. Did the court do a hearing on it? No. And the reason is another decision they made. Member Works put in evidence of a contract. They chose not to put any evidence in to controvert that showing. And, Your Honors, if you go to the... Well, I'm wondering in the definition of a hearing, can't you have a hearing on people submit everything in writing? Well, absolutely, Your Honor. But the law is absolutely clear in every jurisdiction, including the Ninth Circuit, that if the moving party puts in evidence from which you can reasonably infer a contract, it is incumbent on the other side to controvert that with evidence, not just a complaint, in order to have a right to a hearing. The judge cites on the second page of her decision that if a caller accepted the offer after an oral consent, it was sent for enrollment to Member Works. And that's based on, the judge then cites, to Member Works' evidence. And the court points out that the only thing in response is a ball of denial by the appellant. And that's not enough under the case law. If under the Tinder case, which we cite in our briefs, that one-sided, uncontroverted showing is sufficient. And that is the basis on which the court sent it. So number one, the court did decide there was a contract. As Judge Huff said, she's entitled to that presumption because she cited the evidence. And therefore, you're entitled to conclude that she was basing her decision on the standards set forth in those cases. And Judge Huff, or Judge Burns, cited the Supreme Court decision in Citibank, that the judge cited the proper case law, cited the evidence. She's entitled to the presumption that she did the right thing. So she decided the issue. She properly decided it without a trial because they chose not to put in evidence. Well, I guess the issue that concerns me more is what I was talking about in terms of whether the class certification. And I can't see that, you know, I mean, obviously his argument is that no one decided class certification. And there isn't anywhere in the record that I can see where someone went through the process. So how, you know, if one person says you have to do it, and the other person says that you have to do it, and we never provide someone with a venue, what, there's something that, you know, that doesn't seem right about that. So tell me how you get around that. I think it'll sound a little more right again when you see some of these strategic decisions that were made by appellant. When Member Works moved to compel only the individual claims and moved to strike the class allegations, the response of appellant was no arbitration at all. We don't think there can be any arbitration. They never asserted that they wanted an arbitration on a class basis. They never asked or moved for class certification for arbitration. They simply opposed arbitration. Not surprisingly, the district court, therefore, said I'm sending what was asked of me by Member Works, now that I've found a contract, I'm only sending over the individual claims and I am dismissing the class claims from the case. And that was the Now Basel, there's some uncertainty as to what the plurality plus Justice Stevens' decision constitute a holding of a majority in that case. But clearly Basel does not stand for the proposition that where class claims are no longer in the case when they reach the arbitrator, that the arbitrator somehow has an obligation to revisit it or an ability to revisit it. And it certainly, whatever it holds, doesn't stand for the proposition that a judge, as a result of litigating to finality her individual claims, can somehow do a redo in arbitration or in a court once it's done. And that, Your Honor, goes to two additional decisions they made that are fatal. One, when the judge, upon finding an arbitration contract, sending her individual claims to arbitration, dismissing the class claims, dismissing the claims against West, she made clear, I'm also not going to stay this long pending the arbitration. The only thing left before me, she said, is a, after the arbitration, is you come back either for an order to confirm or vacate the award, or you can come back and get a judgment for failure to arbitrate. And under the Randolph, Green Treaty v. Randolph, Supreme Court decision, that is a final decision under 16A3 of the Arbitration Act. And therefore, they had to appeal that 30 days within its issuance, and they failed to do so. And therefore, it's too late to challenge that court opinion. But even if it isn't too late, Your Honor, they say in their reply brief, well, gee, if it wasn't a final decision, we had to wait for a final judgment in order to appeal this class issue, because she's claiming that Judge Huff got it wrong on the class issue. We say that's not correct, but assume for a minute that's their argument. That's not true that they could not appeal until the final judgment. Rule 23F provides for the seeking of an interlocutory appeal from the denial of class certification. And in this case, you have the dismissal of class claims, which certainly is a denial of class certification. And they chose not to pursue that remedy. They claim it was the death knell to go forward with their individual claims in arbitration. Obviously, it wasn't because they did. But assuming that was their position, that is precisely in the Chamberlain v. Ford Ninth Circuit decision, that is precisely the paradigm situation where someone is supposed to assert an appeal under 23F, when they say, if you don't hear my appeal from the dismissal of the class claims or refusal to certify, I don't have a remedy. I can't go forward. They didn't do that. And they know this is very sophisticated class counsel. They went forward with the individual arbitration of the claim. Now it's too late. There's no authority that allows them to undo the litigation of their claim and redo it on behalf of a class. Look what the arbitrator found. No contract. But he admitted, I can't really find no contract. I am bound by the court's decision that there is a contract. So do we deduce now that a new class all has a contract? No. Every individual would have to have a court determination that they had a contract or didn't have a contract because otherwise they can't be in arbitration. And that's why it's too late now for them to try and have a class. Isn't that what Three Valleys says, that the court has to make the determination as to whether there's a contract? Absolutely. And that's why the judge did it with respect to this plaintiff. And the only issue that was moved for which there was a motion to compel arbitration was as to her claims and did not purport to make the decision as to anyone else. And nor did the arbitrator because the class claims had been dismissed. And again, no effort was made to appeal that issue under 23-F. What bothers me is that the record's very skimpy in terms of what it was that led Judge Huff to make the assumption that there's indeed, there was a contract, which is your argument. And all I hear, I suppose, is some sort of oral consent. Is that the theory under which? Oral consent followed, Your Honor, by the sending of the materials that set forth all the terms as well as the arbitration clause itself. And much like the Tinder case which we cite. And her failure to send them back or to even read the materials is enough to establish that there's a contract? In addition to the uncontroverted testimony that the process between West and Member Works in the ordinary course of business was, after receiving a consent to the offer, after acceptance of the offer and a verbal consent on the phone, you were enrolled and then sent the documents. Now they say, well, we dispute that. But a bald allegation and a complaint, which they chose to rely on, isn't good enough. The cases are clear. In the Tinder cases, Your Honor, cited in our brief, a modification to the agreement was sent, that was the issue, that had an arbitration clause. And the court concluded the moving party put in an affidavit that said they sent the materials to them. And the affidavit from the other side was, we don't recall one way or the other if we got it. They said, that doesn't raise a genuine issue. The court properly determined that there was a contract with an arbitration clause. Here, they didn't put in any affidavit. Years later, they put in an affidavit where she goes, I don't recall if I received anything. I don't recall. Again, even if she had done that at the right time, it would not have been enough to get her a hearing. So we're here today because of decisions they made along the way as to not putting an evidence on a contract, and therefore ending up with arbitration of the individual claims of the plaintiff. Not seeking class certification from the court as to the arbitration, or keying up that issue, and so only her claims were sent. Not appealing the issue directly because it was a final decision which bars challenging the court. There is no ground to challenge the arbitration decision itself, the confirming of it. And finally, even when the court over and over said, you're not, the class is gone, the class is gone, they never asserted 23F appeal. And if, where the court, where this court could determine if it really should or should not be in that case. Instead, they fully litigated their claim. And your honor, respectfully, it's too late now. Counsel, are you saying that the July 12th, 02, Judge Huff order was a final order? Yes, your honor. What do you do with line 11? If the arbitration between plaintiff and defendant is not completed within 12 months, the case shall be terminated. In the, obviously it's open ended. Right, but in the Randolph case, the court made clear that if the decision of the court, if the order takes care of the merits of the claims, all the claims before the court, either by way of dismissal or compelling to arbitration. And the only thing left, the only thing left is a, dealing with the motion to vacate or confirm the award. That is a final decision because the merits part of the case is over with that court. This is not a case, your honors, like the ones they cite that weren't final decisions because A, either some claims were not sent to arbitration, so they're still before the court, or B, the court issues a stay and says, I think there's more to do here than just the judgment on, as to the vacating or confirming of the arbitration award. Here, the court expressly denied a stay because she's made very clear. And then she made even more emphatic and subsequent decisions when, when a plant, appellant kept going back and forth to be told again and again. The only thing this court will consider is either a motion to vacate or confirm the award, or to enter a judgment for failure to arbitrate. Everything else, she said, nothing else can be filed in this case because there's nothing else before me. That, under Randolph, is a final decision, and therefore, they had to appeal it under Rule FRAP 4A within 30 days and didn't. But even if that's not the case, their failure to seek 3rd 23F interlocutory appeal is also deadly to their case. What can't happen here is to re-litigate plaintiff's claims. Or somehow, now have a class after the fact. In Basel, there was a class certified in court. Arbitration occurs, and what the court, for the reasons set forth in Basel, sends it back to the arbitrator is to decide, could there be a class? If not, we're going to carve out everything but the plaintiff's already litigated claims, because those can't be redone. You can't do it in reverse. You can't, once a plaintiff goes through their case, doesn't seek 23F appeal review, goes through with their own individual claim. You can't say, well, let's pretend that was a class action. And let's pretend there's a contract for every individual. What needs to be done, and the Smiths could have done it, they didn't do it in a timely manner. Smiths want to file a class action, file a class action. When you asked Judge Huff to strike the class allegation, Judge Huff denied this motion as moot, what does that mean? I'm, I'm sorry, on the, yes. What happened, once the judge had already, on July 2 of 2002, sent the individual claims to arbitration and she determined those hadn't been asked to be sent to arbitration. No one had asked them to be sent, and therefore she dismissed. So the only thing now pending, as she said in her order, was you come back after arbitration on the arbitration board, that's it. They went to the arbitrator, and when they didn't like what the ar, that the arbitrator was following her decision, they went back to the court. And just filed a motion for class certification while it was supposedly in arbitration. She says, you can't do this. That issue's moot. I dismissed that a year ago. You can't come back here. The only thing you can come back here for is to get the award confirmed or vacated. Or a judgment for failure to arbitrate at all. Again, that rendered it a final decision. Thank you, Your Honor. Thank you. Mr. Thorpe, you have about five minutes left. Thank you, Your Honor. May it please the court, Joshua Thorpe for the West defendants. As the court is aware, the West defendants were dismissed from this action on July 15, 2002, approximately four and a half years ago. Since that time, Sanford filed a, what she did was file a state court claim against the West defendants in the San Diego Superior Court. How does that keep you in this case? I'm sorry? How does that keep you in this case? We think we're out of this case. My point was that, was going to be, Your Honor, that that case has been litigated to judgment and now apparently Sanford wants to come back and litigate us, litigate against us again in this case. But we think that the July 2002 dismissal of West was absolutely proper and that we are out of this case. We were dismissed, Your Honor, because the district court found it is undisputed that West didn't mail any of the materials at issue in this case. And the district court found this properly, that section 3009 only applies to parties that mail unordered merchandise. Now the plaintiff's argument on appeal is a policy argument. They say, well, if section 3009 only applies to parties that actually mail and not to parties that cause the mailings, then these parties can get away with it. But that's a policy argument that's best addressed to Congress. The statute itself expressly applies only to people who mail. There are other sections of the statute, the same Postal Reorganization Act, that apply to people who by himself or by his agents are assigned mail or causes to be mailed any pen during advertisement. That's section 3008A. 3010A applies to any person who mails or causes to be mailed any sexually oriented advertisement. So when Congress wanted to go behind the party that actually did the mailing and they don't think there's a private right of action, which I get to. But the statute clearly expressly applies only to parties that mail unordered merchandise. It's undisputed that we didn't. If Congress had wanted the statute to apply to people who use agents or cause mailings, they would have said so just as they did in other subsections of the same statute. So that was the basis for the district court dismissal. I would note there's another issue, statutory issue, which is that the statute applies to merchandise. The arbitrator found that this wasn't merchandise. The only two decisions that are cited, Kipperman and Cashelcar, both support West here. They dealt with materials that were mailed that were offers or descriptions of offers. What you have here is a mailing that is part of a trial offer that describes the terms of a membership that isn't intangible, that is not itself merchandise. And the definition that we cite in our brief is that merchandise excludes intangibles. So just looking at the statute, it was absolutely correct for West to be dismissed because there was no mailing and there was no merchandise. The other issue is that we believe that Section 3009, there is no private right of action under Section 3009. This court held in a 1977 decision in Kipperman that there was a limited private right of action. However, since Kipperman, the Supreme Court's jurisprudence on implied private rights of action has changed dramatically. In particular, the Alexander versus Sandoval case, which is cited in our materials, is a 2001 case, which basically says, look, we're only going to look at, you have to have some affirmative evidence of his legislative intent in order to imply a private right of action. Kipperman didn't do that. What Kipperman said was, we find no evidence of legislative intent to imply a private right of action. But a private right of action would make sense here. It would be compatible with the statute. Alexander has made clear that the federal judiciary is not going to reach out and create private rights of action where Congress didn't do it. Now there are two post-Alexander v. Sandoval cases that deal with the question of whether Section 3009 implies a private right of action. One of them is called Wisniewski v. Rodale, which is at 406 F sub 2nd 550 and is cited in our 28J materials. And it goes through the analysis, it talks about Kipperman and says, while Kipperman may have been correct in 1977, it is clearly incorrect now. And we think because there's a direct conflict between the Kipperman decision and Alexander v. Sandoval, that even though this is a three-judge panel, this panel does not have to follow Kipperman. The Miller v. Gamie case, the 2003 en banc case, obviously says that if a subsequent decision undercuts the theory or reasoning of an earlier decision, that the panel doesn't have to follow it. Wisniewski goes through the analysis and explains exactly why Kipperman is inconsistent with intervening Supreme Court authority. Therefore, we think that we also, I would add, think that procedurally, this appeal is untimely for the reasons that Mr. Heber stated. Thank you. Thank you, Counsel. Mr. Isaacson, you have some reserve time. Thank you very much, Your Honor. Counsel has said that we're here because of strategic decisions that plaintiff's counsel made. They're kind of like the contract that Patricia Sanford didn't know she'd entered. I wasn't aware that we'd made some of those. Well, tell me about, before the referral to arbitration, about dismissing the class action causes of, you know, the class action causes of action. What happened exactly? Well, what happened exactly was that the order referring the matter to arbitration answered our argument that it would be unconscionable to order arbitration on an individual basis rather than allowing us to proceed on behalf of a class. The order at page 5, and this is ER 36 at page 5, says, and I quote Judge Hoff, in addition, the arbitration clause does not prevent them from proceeding as a class action, end quote. Now, at the end of the order, she says, based on the reasoning above, the court grants defendant MWI's motion to compel arbitration. We took that to be an order that was allowing us to proceed on a class basis. We went to the arbitrator, and we filed a petition to arbitrate, captioned class action, and full of class allegations. The arbitrator took the fact that the last- I just heard him say that something was missing. Claims against West were dismissed. And subsequent orders in the case- That's in the July 02 order. Yes. And subsequent orders in the case indicate that the class action allegations were also dismissed, and that therefore, the arbitrator could not allow the matter to proceed on behalf of a class. So when did that happen? Was that before the arbitration? According to the district court, that happened in the order referring the matter to arbitration, although as a plaintiff's lawyer, I have to confess, reading that order, we certainly did not realize that. We could not have recognized that from the order. It looked to us like it was an order sending the class action to the arbitrator, and we tried to proceed on behalf of a class action. We're told, no, you can't. Judge Huff precluded that. Well, under Basel, Judge Huff couldn't preclude that. Counsel, would you respond to Mr. Heber's argument with respect to the formation of the contract in the first place? Obviously, his argument is that Judge Huff found there was a contract. Now, what's your response? He's basing it on the oral consent and your failure to respond. If she found that there was a contract, it was error under Section 4, because we were entitled to an evidentiary hearing. And if there was a genuine issue of fact, we were entitled to a trial. But I think he's suggesting there was no genuine issue of fact, because there was no response. Well, there was a response. We put in a response that responded specifically to what their brief said. Their brief acknowledged that our contention, our theory of the case, was that there was no contract, and their brief said if Sanford contends, and it didn't say if she puts in an affidavit, it said if she contends that there was no contract, there won't have to be a jury trial. The matter was scheduled for a hearing. Now, what they put in was evidence that was part of an undisputed factual record on which the arbitrator found there was no contract. So you've got ambiguous evidence put in by Chadbourne. It's basically confirming the allegations of the complaint. And we had a hearing noticed for July 15th with a plaintiff who worked across the street at Rite Aid. The easiest thing in the world for her to take a little bit of time off and come across the street for the evidentiary hearing, which is the last minute, is taking off calendar. We get no hearing. We get no trial. We get none of those things. That's a violation of the procedural rights that we have in the statute and a finding on the basis of Chadbourne's declaration, which basically recites the same upsell script that the arbitrator found was misleading and did not produce a meeting of the minds or a contract, indicates there's a material issue of fact to be decided there, a material issue of fact to be decided with us presenting evidence at that hearing on July 15th. It was taken off calendar. A material issue of fact that under the statute has to be decided in a trial. Now, it's not a full-blown bells and whistles trial of all the merits of the case, that's for sure. But we were entitled to go to trial and to have our witness testify, particularly when the moving paper said if she contends that she didn't enter a contract, that's good enough. Whereas in the reply brief, they came back and said, oh, well, you didn't put an affidavit in. Gotcha. Everybody knew that was our contention, and the orders recite that that's our contention. Judge Huff recites that, and she doesn't say that there was some procedural defect. She doesn't pull that kind of a gotcha. Now, we're looking at counsel here saying we made strategic decisions, and they're forgetting what Conley against Gibson said about litigation under the federal rules. It's not supposed to be a game of skill where a single misstep of counsel is fatal and bars reaching the merits when people know what's going on in the case. And the contention that we should have moved for an interlocutory appeal under 23F is very revealing. It's an interlocutory appeal. 23F is not something that would apply to a final judgment. It's something that's discretionary.   You file the request for leave to file an interlocutory appeal under Rule 23F, or you can appeal at the end of the case. Most often when you petition, it's denied and, oh, I'm sorry, I'm in the red. I thank you very much. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in the United States v. Mayor. Thank you.
judges: Hall, O'scannlain, Callahan